IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| REBECCA S. FREEMAN (LOVELACE), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:10-cv-00485-NKL |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Plaintiff Rebecca Freeman's ("Freeman") Social Security Complaint [Doc. # 4]. Freeman seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of her request for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381, *et seq*. The Administrative Law Judge ("ALJ") found that Freeman was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied Freeman's request for review. Freeman has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). Because the Court concludes that the ALJ failed to adequately consider all relevant evidence in determining Freeman's residual functional capacity, this matter is remanded to the Commissioner for further consideration.

**I.      Background**

1

### A. Factual and Procedural History[1]

Born on February 15, 1980, Freeman, who has a high school education, had been employed as a Salvation Army bell ringer, housekeeper, amusement park ride operator, and fast food worker. [Tr. 70, 306, 308]. Freeman filed an application for disability insurance and supplemental security income benefits on August 16, 2005, claiming she became disabled on March 20, 2004, due to "linphadema [sic] and severe swelling." [Tr. 53, 66, 69]. When her application was initially denied, the Commissioner found that Freeman did not qualify for supplemental security income benefits or "Social Security benefits beyond that which she already received."[2] [Tr. 37, 39]. On July 5, 2008, following an evidentiary hearing, [Tr. 301-328], the ALJ issued a written decision denying supplementary security income benefits to Freeman because she was not under a "disability" as defined in the Act. [Tr. 18]. After the Appeals Council denied Freeman's request for additional administrative review of the ALJ's decision, Freeman sought review by the Court.

Freeman is approximately 5'5" tall and weighs about 330 pounds. [Tr. 313]. She has suffered from asthma since the age of 9. [Tr. 310]. Her physicians have indicated that

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

[2] Freeman does not specifically dispute the finding that she does not qualify for Social Security disability benefits. Indeed, her pending Complaint concerns only her supplemental security income claim. [Doc. #4, at 2]. Although in her brief, Freeman requests the Court to grant her claim for "disability insurance benefits commencing March 20, 2004," [Doc. #9, at 18], she offers no reasoning why the initial denial was error. Therefore, the Court does not address Freeman's initial claim for Social Security disability benefits.

she is obese or morbidly obese. [*See, e.g.*, Tr. 177, 196, 246]. While Freeman acknowledged that she has had swelling in her legs in the past, she reported that it worsened after she was discharged from the hospital on March 20, 2004, following cesarean-section surgery. [Tr. 196, 198]. At an April 15, 2004 emergency care visit, Dr. Rodney Duff noted that Freeman had "bilateral pitting edema to the knees." [Tr. 198]. Her bilateral lower extremity edema was later assessed as lymphedema. [Tr. 229]. Some of Freeman's treating physicians have opined that the lymphedema in her legs is related to her obesity. [Tr. 247, 285, 292].

Suggested treatment by Freeman's physicians included medication, wearing compression stockings, losing weight, and elevating her legs. During the course of being treated, Freeman gave varied responses why she did not wear the stockings: prohibitive cost, [Tr. 154, 194, 270], the hose "roll[ing] down" and not "stay[ing] up," [Tr. 284], and not liking the hose, [Tr. 175]. Plaintiff testified that she was "doing the best that I can" to lose weight, but that it was difficult because weight loss caused water to go "straight to [her] legs." [Tr. 314]. Plaintiff also testified that she needed to elevate her legs above her heart "if possible," and that she often found relief by elevating her legs. [Tr. 310; *see also* Tr. 149, 176, 188]. Notes from Freeman's October 2004 emergency visit to the Research Medical Center indicate that although Freeman reported that she "tries to elevate her legs," she "seems to have no understanding of her problems." [Tr. 176].

In addition to her leg pain, Freeman suffered an "[intense] bout with depression" for a month and sought treatment at Swope Parkway Behavioral Health in December

3

2004. [Tr. 167]. At her initial assessment, Freeman reported that she had been in and out of depression since she was a teenager, had been sexually abused as a child and raped as an adult, and had her children removed from her by family services. [Tr. 166, 173]. Dr. Nalu Reddy diagnosed Freeman with "major depression recurrent, moderate," and assigned a GAF score of 30. [Tr. 164].

In October 2005 at the request of the Department of Social Services, Dr. Cynthia Hill, a licensed psychologist, performed a consultative examination of Freeman. [Tr. 154-56]. During the course of the examination, she asked Freeman questions about her lymphedema and past sexual assaults. Dr. Hill noted that in addition to the counseling she received from Swope Parkway in December 2004, Freeman also received counseling from DFS when her children were removed and from Hope House. [Tr. 155]. Dr. Hill also conducted a mental status exam and found, among other things:

> Claimant was oriented to person, place, and time. Remote memory was somewhat impaired. She struggled to recall correct dates of her history, exhibiting some inconsistencies in reporting. . . . Responses to judgment questions was appropriate. However, she did not seem to understand her condition or be motivated to pursue treatment. Insight was poor.

[Tr. 155]. Dr. Hill diagnosed Freeman with a GAF score of 40. [Tr. 156].

Dr. Hill noted that Freeman rides in a motorized cart when grocery shopping, sits frequently when cooking; sweeps and mops, though with pain in her legs; tries to manage money with help from an elderly friend; and is "very social with lots of friends." [Tr. 156]. Freeman also testified that she crochets, reads the Bible, watches television, tries to fix at least one meal a day, and attends church weekly. [Tr. 312-313, 316].

### B. The ALJ's Decision

To establish her entitlement to benefits, Freeman must be unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, Freeman was not under a "disability" unless her impairment was so severe that she was unable to do her previous work or any other kind of substantial gainful work which existed in the national economy. *Id.* The ALJ found that Freeman did not meet this burden "since August 16, 2005, the date [Freeman's] application was filed." [Tr. 18].

The ALJ found that Freeman had the following severe impairments: chronic lymphedema of the lower extremities and obesity. [Tr. 12]. *See* 20 C.F.R. 416.920(c). However, the ALJ determined that Freeman did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. pt. 404, subpt. P, app. 1 (2008). The ALJ further found that Freeman retained the residual functional capacity ("RFC") to perform a range of light work that requires no more than lifting ten pounds frequently and twenty pounds occasionally. Freeman was limited to understanding and remembering simple instructions, required the ability to sit or stand at her option and to change positions, but could stand and walk "at least 2 hours in an 8 hour workday." [Tr. 14]. The ALJ also indicated that Freeman should "avoid working around excessive dust, fumes and gases . . . and avoid working around unprotected

5

heights and hazardous moving machinery." [Tr. 14]. Also within the ALJ's RFC finding, he stated that Freeman's obesity and pain and problems in her legs and feet "[are] of a slight level and would have a slight effect on her ability to perform basic work activities, however these conditions are or can be controlled by appropriate medication without any significant adverse side effects." [Tr. 14]. The ALJ arrived at this RFC after giving "no weight" to Dr. Hill's opinion, [Tr. 16], and without specifically addressing Freeman's purported need to elevate her legs to treat her lymphedema.

Although the ALJ found that Freeman could not perform past relevant work due to Freeman's limitation requiring the option to stand or sit, he did find that Freeman could perform the job of an assembly worker, of which there are 361,000 jobs in the national economy. [Tr. 17].

Freeman raises three arguments on appeal. She asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to give proper weight to the opinion of examining psychologist Cynthia Hill, Ph.D., 2) failed to consider Freeman's mental impairments as severe, and 3) failed to properly consider Freeman's need to elevate her legs during a normal workday. [Doc. # 9, at 12-16].

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v.*

*Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### A. Weight Given to Dr. Hill's Opinion

The ALJ stated in his decision:

> [T]he undersigned has given substantial weight to the opinions of the treating and examining physicians who have had a greater opportunity to evaluate claimant's impairments and associated limitations and determine the extent to which they impact claimant's impairments and associated limitations and determine the extent to which they impact claimant's ability to perform work-related activities. The exception is the opinion of the psychologist, Dr. Hill, who as noted above assessed a GAF much lower than that supported by the clinical records and claimant's actual daily functioning. Therefore, the opinion of Dr. Hill is given no weight.

[Tr. 16]. The dismissal of a medical evaluation must be supported by substantial evidence. *Hancock v. Secretary*, 603 F.2d 739, 740 (8th Cir. 1979); *see also Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000). The Court finds that the ALJ's decision to give "no weight" to the entirety of Dr. Hill's opinion based on his disagreement with her assessed GAF score is not based on substantial evidence.

Foremost, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir 1999)). Here, the ALJ fails to explain why his disagreement with Dr. Hill's GAF score assessment justifies rejecting the remainder of her opinion. Further,

7

even if it is within the ALJ's zone of choice to give "no weight" to Dr. Hill's opinion based solely on his disagreement with her GAF score, that decision is inconsistent with the"substantial weight" weight he afforded to the opinion of Freeman's treating physicians at Swope Parkway Behavioral Health, who had assigned a GAF score of 30–a full ten points lower than Dr. Hill's assessment of 40. [Tr. 16, 164].

To the extent that the ALJ discounted Dr. Hill's report because it was inconsistent with the clinical records and Freeman's own activities, the Court notes that the clinical records do support various parts of Dr. Hill's opinion. For example, Dr. Hill noted that Freeman "did not seem to understand her condition or be motivated to pursue treatment. Insight was poor." [Tr. 155]. This is in accord with medical records from the Research Medical Center where the emergency physician noted: "Last [saw] her doctor [approximately] 1 month ago at Swope [and] seems to have no understanding of her problems." [Tr. 176]. Additionally, the Court also notes that Dr. Hill accounted for Freeman's "activities of daily living" when forming her opinion. [Tr. 156]. For example, Dr. Hill was aware that Freeman grocery shops, cooks, visits with friends, cleans, and manages her money–but, all with limitations. An ALJ can discount a physician's opinion based in part on a petitioner's own testimony about her activities, *see e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 815 (8th Cir. 2009). Here, however, Dr. Hill did account for Freeman's activities, yet the ALJ did not provide additional explanation why Dr. Hill's opinion should be dismissed. Thus, on the face of his decision, the ALJ effectively substituted his own inferences from the record for that of Dr. Hill. This he cannot do. *See*

*Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003) (citing *Lund v. Weinberger*, 520 F.2d 782, 785 (8th Cir. 1875)).

For the foregoing reasons, the ALJ's decision to give "no weight" to Dr. Hill's opinion was not based on substantial evidence. Upon remand, the Court orders the ALJ to consider Dr. Hill's opinion and reevaluate Freeman's RFC as necessary, consistent with this Order.

### B. Freeman's Mental Impairments

Freeman asserts that the ALJ failed to consider Freeman's mental impairments as severe. [Doc. # 9, at 15]. As Dr. Hill's report discusses Freeman's mental impairments, and as this case will be remanded to the ALJ for an appropriate consideration of Dr. Hill's opinion, Freeman's mental impairments will consequently be reevaluated. Thus, the Court refrains from addressing this issue except to note that the threshold for finding severity is low.

### C. Determination of Freeman's RFC

"It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Freeman specifically argues that the ALJ erred by failing to account for her need to elevate her legs during a normal workday.

The ALJ's decision makes only one reference to Freeman's need to elevate her legs for relief: "[Freeman's physician] instructed claimant to lose weight, increase exercise and continue to elevate her legs when she is inactive." [Tr. 13]. Other physicians also recommended leg elevation as part of Freeman's treatment, [Tr. 183 ("elevate legs"), 292 ("continue to elevate her legs when possible")], or noted that Freeman indicated that she found relief by elevating her legs. [Tr. 149, 176, 188]. Nowhere in his decision did the ALJ explain why he did not consider these treatment recommendations as part of Freeman's RFC. "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims* (July 2, 1996). Thus, the Court remands the case to the ALJ for an explanation why Freeman's RFC did not include a requirement that permits her to elevate her legs during a normal workday, or in the alternative, to include such a requirement as part of Freeman's RFC.

Additionally, the Court notes that the ALJ's RFC finding is unclear as it states that Freeman is "able to . . . stand and walk each at least 2 hours in an 8 hour day." [Tr. 14]. Because an "RFC does not represent the least an individual can do despite her limitations or restrictions, but the most," *id.*, the Court remands the case to the ALJ for clarification.

### III. Conclusion

Because the ALJ did not properly consider Dr. Hill's opinion or adequately explain his RFC determination, the decision of the Commissioner is reversed and the matter is remanded for a new administrative hearing, consistent with this Court's order.

Accordingly, it is hereby ORDERED that the decision of the Commissioner is REVERSED and the case is REMANDED.

s/ NANETTE K. LAUGHREY  
NANETTE K. LAUGHREY  
United States District Judge

Dated: January 24, 2011  
Kansas City, Missouri